UNITED STATES BANKRUPTCY  COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| TYREE J. RAGLAND | : | |
| Debtor | : | Bankruptcy No. 05-18142 |

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| SHAUN E. NEIL and MARLO T. NEIL | : | |
| Debtors | : | Bankruptcy No. 05-31361 |

...................................................

MEMORANDUM

...................................................

In both above-captioned chapter 13 cases, the law firm of Jenkins &
Clayman has filed essentially identical motions: "To approve distribution of pre-
confirmation payments held by the chapter 13 trustee to debtor's counsel for outstanding
legal fees."[1]  In essence, the two motions seek the same relief: directing the chapter 13
trustee to pay to former debtors' counsel, Jenkins & Clayman, all funds received by the
trustee from these debtors prior to dismissal of their chapter 13 cases.

The chapter 13 trustee opposes the relief sought by Jenkins & Clayman for
a variety of reasons.  He argues that Jenkins & Clayman does not have an administrative
expense claim, and so the provisions of 11 U.S.C. § 1326(a)(2) are inapplicable and the

---

[1]The motions even contain the same typographical errors in paragraph
6—referring to section 583(b) of the Bankruptcy Code, rather than the intended section
503(b)—as well as the same citation to Fed. R. Bankr. P. 2017 in paragraph 2.  Rule 2017
provides a procedure for a court to examine whether pre-bankruptcy or post-bankruptcy
compensation paid to an attorney is excessive.  As will be discussed, these motions do not seek
any relief under Rule 2017.

firm is not entitled to receive any distribution from funds he still holds.[2]  Instead, the

trustee contends that the express language of 11 U.S.C. § 349(b)(3) requires that the funds

be returned to the debtors.

Moreover, the trustee is concerned that if Jenkins & Clayman's legal

position were correct, it is likely that other entities in these cases—such as Lamar

Communities, LLC, the lessor in the Ragland bankruptcy case—would hold

administrative claims and also be entitled to the funds held by the trustee.  See generally

In re Mandel, 319 B.R. 743 (Bankr. S.D. Fla. 2005); In re Babbs, 265 B.R. 35 (Bankr.

S.D.N.Y. 2001).  If so, then it would be inappropriate for the trustee to simply pay over

the funds he holds to former counsel.[3]

---

[2]11 U.S.C. § 1326(a)(2) provides:

A payment made under this subsection shall be retained by the
trustee until confirmation or denial of confirmation of a plan.  If a
plan is confirmed, the trustee shall distribute any such payment in
accordance with the plan as soon as practicable.  If a plan is not
confirmed, the trustee shall return such payment to the debtor, after
deducting any unpaid claim allowed under section 503(b) of this
title.

[3]Thus, the present dispute between Jenkins & Clayman and William C. Miller,
Esquire, a standing chapter 13 trustee in this district, may assume an importance beyond the
amounts at issue in these two cases.  Jenkins & Clayman may be challenging indirectly the notice
procedure utilized by Mr. Miller for seeking dismissal of chapter 13 cases.
    By virtue of Fed. R. Bankr. P. 2002(a)(4), all creditors as well as the debtor are
entitled to receive notice of the filing of a motion to dismiss a bankruptcy case.  But such notice
is required only in chapter 7, 11 and 12 cases.  No notice to creditors is required in chapter 13
cases.  Thus, when the chapter 13 trustee files a motion to dismiss, Mr. Miller only provides
notice to the debtor and debtor's counsel (unless the court directs otherwise).
    If Jenkins & Clayman are correct in its position that a chapter 13 trustee is
obligated to pay to administrative expense claimants those funds received from a debtor prior to
dismissal, then it follows that all such claimants are entitled to some type of notice prior to the
distribution of those funds.  One possible scenario would require the trustee to provide notice of
(continued...)

In addition to his objections to paying to Jenkins & Clayman the funds that he received from these debtors prior to dismissal of their cases, the trustee also contends that this court does not have subject matter jurisdiction to adjudicate the relief sought in these two motions, given the prior dismissal orders entered.

The parties were afforded the opportunity to address the jurisdictional issue, and they have filed thoughtful memoranda on the point. The question of my power to decide the two pending motions is now ripe for determination.

I.

The relevant facts for purposes of subject matter jurisdiction are straightforward and undisputed in both cases.

---

[3](...continued)
his dismissal motion to all entities that may hold an administrative claim. In a given case, he may not be aware of the identity of those entities and so may feel obligated undertake the expense of notifying all creditors

In addition to concerns about notice to potential administrative claimants, it is also possible that the conduct of the dismissal hearing would be altered. Instead of simply deciding whether cause for dismissal of the chapter 13 case is demonstrated, pursuant to 11 U.S.C. § 1307(c), the position of Jenkins & Clayman may suggest that the dismissal hearing also include a determination of administrative claims.

Courts have held that a chapter 13 trustee may not take a commission under 28 U.S.C. § 586(e) for his services if the case is dismissed prior to confirmation of a plan. See, e.g., In re Miranda, 285 B.R. 344 (Table), 2001 WL 1538003 (B.A.P. 10th Cir. 2001); In re Rivera, 268 B.R. 292 (Bankr. D.N.M. 2001). Thus, the more elaborate the dismissal process becomes from the trustee's perspective, the greater the level of uncompensated trustee services.

This dynamic may underscore the trustee's opposition to the present motions filed by Jenkins & Clayman.

A.


On June 10, 2005, Tyree Ragland filed a voluntary petition in bankruptcy under chapter 13.  The law firm of Jenkins & Clayman was counsel of record for Mr. Ragland.  Also on June 10, 2005, Jenkins & Clayman filed the requisite disclosure of compensation under 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b).  This disclosure statement revealed that the debtor paid $301 prepetition to Jenkins & Clayman, that the law firm agreed to charge $1,986 for services connected to its chapter 13 representation, and that $1,635 of this fee remained unpaid.

Mr. Ragland then filed his proposed chapter 13 plan and later amended that plan.  He also filed and later amended his bankruptcy schedules.  Lamar Communities LLC, the debtor's lessor, filed a motion to terminate the bankruptcy stay, which motion was granted by default.  The debtor also filed a motion seeking to bifurcate a secured claim under section 506(a), but that motion was dismissed for lack of prosecution.

On November 2, 2005, the chapter 13 trustee filed a motion to dismiss this case, alleging that the debtor's proposed plan was not feasible and that the debtor had failed to tender all promised payments under his plan.  The trustee filed a certification of service, stating that his motion had been served upon the debtor and debtor's counsel.

The hearing on the dismissal motion, along with a confirmation hearing, was postponed until February 7, 2006.  On February 7, 2006, confirmation was denied and the case was dismissed.  The order of dismissal, entered pursuant to 11 U.S.C. §

4

1307(c), did not purport to retain jurisdiction over any matters, nor did it provide that property of the estate would not revest.  See 11 U.S.C. § 349(b)(3).[4]

On February 10, 2006, Jenkins & Clayman filed the instant motion demanding that the trustee pay to it the sum of $440, which sum represents the total of plan payments allegedly paid to the trustee by the debtor prior to dismissal, pursuant to 11 U.S.C. § 1326(a)(1).[5]  The trustee stated in open court that he still has possession of these funds.

On February 14, 2006, after the case was dismissed, Jenkins & Clayman filed a priority proof of claim in the amount of $1,685, dated February 8, 2006.  On March 13, 2006, more than one month after the case was dismissed, Jenkins & Clayman also filed a fee application seeking an award of compensation in the amount of $1,986.00

---

[4]Section 349(b)(3) states:

b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title--
                                    ***
(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

[5]Under section 1326(a)(1), a chapter 13 debtor must begin tendering plan payments to the trustee within thirty days from the date the plan is first filed, unless the court directs otherwise.  Thus, payments do not begin at confirmation.  Among other policies, this provision allows the trustee to monitor, prior to confirmation, whether the debtor can afford his proposed payments.

in fees and $43.40 in expenses, less $301 already paid by the debtor.[6]  The application

demands allowance of fees and costs in the amount of $1,528.40.[7]


B.


     Mr. and Mrs. Neil filed a joint voluntary chapter 13 petition on August 24,

2005.  They too were represented by the law firm of Jenkins & Clayman.  The law firm

filed a Rule 2016(b) disclosure statement revealing that its fees would be $1,986 and that

the debtors had paid no retainer to it.[8]  The debtors did, however, pay to counsel the

chapter 13 filing fee of $194.[9]

     On November 14, 2005, the chapter 13 trustee filed a motion to dismiss,

alleging that the debtors had not tendered all required plan payments.  The trustee

certified that service of his motion was made upon the debtors and their counsel.  A

hearing on this motion was postponed until February 7, 2006.  On January 19, 2006, the

---

[6]The application does not contain any lodestar information: i.e., the services rendered; the time spent rendering the service; the identity of the professional who rendered the services; the hourly rate of the professionals rendering such services; and the background of those professionals.  Essentially, the application merely restates the law firm's proof of claim.

[7]This is probably a typographical error, since $1,986.00 plus $43.40, minus $301.00, equals $1,728.40.

[8]This filing was the Neils' third chapter 13 petition.  The first was docketed at 03-18617.  The second was docketed at 04-33276.  Both cases were dismissed, although the first was dismissed after confirmation.  Jenkins & Clayman also represented the Neils in their second case.

[9]In their prior case, Jenkins & Clayman filed a disclosure that a retainer of $501 had been paid by the Neils.

6

trustee filed a second motion to dismiss, asserting different bases for dismissal.  That motion was also scheduled to be heard on February 7, 2006, along with confirmation.

On February 7, 2006, confirmation was denied and the chapter 13 case was dismissed.  The order of dismissal, entered pursuant to 11 U.S.C. § 1307(c), did not purport to retain jurisdiction over any matters, nor did it provide that the property of the estate would not revest.  See 11 U.S.C. § 349(b)(3).

On February 10, 2006, Jenkins & Clayman filed the instant motion demanding that the trustee pay to former counsel the sum of $600, which sum represents the total of plan payments allegedly paid to the trustee by the debtors prior to dismissal, pursuant to 11 U.S.C. § 1326(a)(1).  The trustee again stated in open court that he still has possession of these funds.

The docket entries do not reflect that Jenkins & Clayman have filed either a fee application or a proof of claim in this case.

## II.

Federal courts, including bankruptcy courts, can only determine disputes over which they have subject matter jurisdiction.  See, e.g., In re Guild and Gallery Plus, Inc., 72 F.3d 1171 (3d Cir. 1996); In re Hall's Motor Transit Co., 889 F.2d 520 (3d Cir. 1989).  Indeed, federal courts are obligated to insure that they have subject matter jurisdiction over disputes and may raise the issue sua sponte.  See, e.g., In re Yousif, 201 F.3d 774, 776 (6th Cir. 2000); Liberty Mutual Insurance Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995); In re Hall's Motor Transit Co., 889 F.2d at 522.  Here,

7

the chapter 13 trustee asserts that the dismissal of these two cases, coupled with the language of the dismissal orders, deprives me of subject matter jurisdiction over Jenkins & Clayman's motions to receive all funds paid by these debtors and held by the trustee.

In general, in order for a bankruptcy court to have subject matter jurisdiction, a dispute must at least be "related to" a pending bankruptcy case. See, e.g., Halper v. Halper, 164 F.3d 830 (3d Cir. 1999). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted).

It is important to observe that the concept of a related proceeding overlaps, but is wider in scope than, that of a core proceeding; these two jurisdictional categories are not completely separate and distinct. Rather, all core proceedings must be related to a bankruptcy case and so may be considered a subset of the broader category. See In re Central Ice Cream Co., 82 B.R. 933, 936 (N.D. Ill.1987) ("[A] proceeding that is not a related proceeding a fortiori cannot be a core proceeding.").

Indeed, the Third Circuit Court of Appeals recognized this point in In re Marcus Hook Development Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991), when it explained that, for proposes of determining subject matter jurisdiction, the classification issue of core versus related is immaterial. Agreeing with other circuit courts, the appellate court held that when determining whether a bankruptcy court has the power to determine a dispute, a court need only decide whether the proceeding "is at least 'related to' the bankruptcy." Id. If the definition of a related proceeding did not include all core

8

proceedings, then the circuit court would have required two separate jurisdictional analyses.

As a result, the assertion by Jenkins & Clayman—that resolving their demand to be paid funds held by the trustee for bankruptcy services rendered falls within a bankruptcy court's core jurisdiction—is not meaningful in a vacuum. The more precise issue is whether resolving former counsel's demand for the trustee to turn over to it all funds collected prior to dismissal is a dispute over which this court has at least related to jurisdiction. If so, then the trustee's contention must be denied.

In its broadest sense, a bankruptcy court's subject matter jurisdiction over disputes is restricted by 28 U.S.C. § 1334 to those matters that could affect the administration of the bankruptcy estate. See, e.g., Halper v. Halper, 164 F.3d at 837. If it could affect the administration of the bankruptcy estate, such as by increasing or reducing estate property, by increasing or reducing claims, or by affecting the priority of claims, then the dispute is "related to" the bankruptcy case.

In general, once the underlying bankruptcy case is closed, the administration of the bankruptcy estate has terminated, and so any proceeding or motion filed after the case has concluded falls outside of bankruptcy court jurisdiction, unless the case is first reopened. Disputes arising after a bankruptcy case is closed cannot have an effect upon the administration of that case: the case is no longer being administered.

Consequently, a judge of the District Court for the Eastern District of Pennsylvania expressly held that a bankruptcy court has no jurisdiction to consider an adversary proceeding filed while the bankruptcy case remains closed:

> The court finds that where a bankruptcy case is closed and the
> estate no longer exists, and where plaintiff does not seek to

9

> have the bankruptcy case opened for cause pursuant to
> 11 U.S.C. § 350(b) and Bankruptcy Rule 5010, the court is
> without jurisdiction to entertain any proceedings, irrespective
> of whether those proceedings are defined as "core" or related
> "non-core" proceedings.

Walnut Associates v. Saidel, 164 B.R. 487, 491 (E.D. Pa. 1994).

This conclusion—that a bankruptcy court has no power to decide a bankruptcy dispute after the case is closed, unless the case is first reopened—has been accepted by a number of courts.  E.g., Cook v. Chrysler Credit Corp., 174 B.R. 321, 327 (M.D. Ala. 1994) ("Absent reopening, there is no longer a bankruptcy estate being administered which could be affected by the present litigation.  Therefore, the court does not find the present action to be one which arises under or relates to a Title 11 proceeding.  The court interprets 28 U.S.C. § 1334 to contemplate pending bankruptcy proceedings."); In re Brantley, 1997 WL 74663, at *1 (Bankr. W.D. Ark. 1997) (holding that an adversary proceeding filed after a debtor was discharged and the bankruptcy case was closed is improper); In re Cassidy, 1995 WL 661244, at *3 (Bankr. N.D. Ga. 1995); see also Matter of Carter, 38 B.R. 636, 638 (Bankr. D. Conn. 1984) ("[A] state-court action may be removed to the bankruptcy court only if a title 11 case is pending.").

In this instance, however, the Neil and Ragland cases were never closed within the meaning of section 350(a); closing refers to the full and complete administration of the case.  Rather, these two cases were dismissed under section 1307(c), upon motions of the chapter 13 trustee.  Although a dismissed case may be reported to the judiciary's Administrative Office as "closed" for statistical purposes, see In re Lewis & Coulter, Inc., 159 B.R. 188, 191 n.4 (Bankr. W.D. Pa. 1993), virtually all courts have recognized that a bankruptcy case that has been dismissed is not closed within the

10

meaning of section 350(a).  Therefore, these two cases cannot be reopened.  As one
commentator has noted:

> The Court of Appeals for the Ninth Circuit and other courts
> have held that a case cannot be reopened unless it was closed
> pursuant to section 350(a) after it has been administered.
> Therefore, a dismissed case could not be reopened under
> section 350(b).  A dismissal could be undone only through an
> appeal or a motion under Federal Rule of Bankruptcy
> Procedure 9023 or 9024.

3 Collier on Bankruptcy ¶ 350.03, at 350-6 (15th ed. rev. 2004) (footnote omitted); see,
e.g., In re Income Property Builders, Inc., 699 F.2d 963, 965 (9th Cir. 1982) (per curiam);
In re Flores, 271 B.R. 213, 2001 WL 543677, at  *3 (B.A.P. 10th Cir. 2001) (Table); In re
Critical Care Support Services, 236 B.R. 137, 140-41 (E.D.N.Y. 1999); In re King, 214
B.R. 334, 336 (Bankr. W.D. Tenn. 1997); In re Woodhaven, Ltd., 139 B.R. 745, 747-48
(Bankr. N.D. Ala. 1992); Matter of Garcia, 115 B.R. 169, 170 (Bankr. N.D. Ind. 1990);
see also Vergos v. Gregg's Enterprises, Inc., 159 F.3d 989, 991 n.1 (6th Cir. 1998)
(explaining that "conversion," "dismissal" and "closure" are all distinct statutory "terms
of art employed in the Bankruptcy Code").

Although these two bankruptcy cases were dismissed rather than closed, the
principle that a bankruptcy judge has no jurisdiction over a dispute filed after the case has
been closed applies with equal force to dismissed cases.  Indeed, the Third Circuit Court
of Appeals noted "[a]s a general rule, the dismissal of a bankruptcy case should result in
the dismissal of 'related proceedings' because the court's jurisdiction of the latter
depends, in the first instance, upon the nexus between the underlying bankruptcy case and
the related proceedings."  In re Smith, 866 F.2d 576, 580 (3d Cir. 1989).

If the dismissal of a case should typically result in the relinquishment of jurisdiction over a dispute filed prior to dismissal, then, a fortiori, a bankruptcy court has no jurisdiction over disputes commenced after the case has been dismissed.  See In re Income Property Builders, Inc., 699 F.2d at 964 ("Once the bankruptcy was dismissed, a bankruptcy court no longer had power to order the stay or to award damages allegedly attributable to its vacation."); In re King, 214 B.R. at 337 ("[T]he debtors' motion to set aside the order lifting the stay as to Vanderbilt is not a proper one for this Court to consider given the Court's denial of [reconsideration of the earlier dismissal order]."); cf. Matter of Querner, 7 F.3d 1199 (5th Cir. 1993) (bankruptcy court abused its discretion to retain jurisdiction over a dispute after the case was closed).

This principle was recently upheld in In re Valdez Fisheries Development Association, Inc., 439 F.3d 545 (9th Cir. 2006).  The Ninth Circuit concluded that a bankruptcy court had no jurisdiction to interpret a settlement agreement approved by the court prior to dismissal of the bankruptcy case.  The interpretation of the settlement could not conceivably affect any aspect of the bankruptcy case because the case was no longer pending.  Id., at 547-48.  In so concluding, the Court of Appeals acknowledged the distinction between retaining jurisdiction over litigation pending at the time of dismissal, and the assertion of jurisdiction over a dispute first raised after the case has been dismissed.  Id., at 548-49.  Only in the former instance does a court have discretion to retain jurisdiction.  In the latter instance, no jurisdiction ever existed.

Section 349 includes a statutory exception to the notion that dismissal of a case ends all administration of the bankruptcy estate.  Section 349(b)(3), quoted earlier, provides that property of the bankruptcy estate will revest in the entity that had possession

just prior to the commencement of the bankruptcy case unless the court, for cause, orders

otherwise.  When a court orders otherwise, property of the bankruptcy estate will remain

in the estate and thus be subject to the continued administration of the court.  Subject

matter jurisdiction would therefore exist as to disputes involving that property.  See, e.g.,

In re Gregory, 214 B.R. 570, 574 (S.D. Tex. 1997) ("It is undisputed that the February

1995 Order of the Bankruptcy Court granting Debtor's motion to dismiss specifically

retained jurisdiction over the net proceeds from the sale of the homestead.  As a result, the

Bankruptcy Court continued to have jurisdiction over the net proceeds after the

homestead was sold and after the case was dismissed."); In re Elgin's Paint & Body Shop,

Inc., 2000 WL 33710257, at *5 (Bankr. D.S.C. 2000) ("Prior to dismissing the case, this

Court specifically reserved jurisdiction to consider the application of the funds received

from the liquidation of the bankruptcy estate."); In re Halpern, 229 B.R. 67 (Bankr.

E.D.N.Y. 1999); see also Matter of Samford, 125 B.R. 230, 234 (E.D. Mo. 1991) (when

dismissing the case, the bankruptcy court retained jurisdiction to determine the

disgorgement of counsel fees under section 329).

       In the above-captioned Ragland and Neil cases, neither dismissal order

retained jurisdiction over the funds in the trustee's possession.  Thus, by virtue of section

349(b)(3), those funds paid by the debtors to the trustee revested "in the entity in which

such property was vested immediately before the commencement of the case"—

presumably the debtors—and are no longer estate property.  Accordingly, it would appear

that this court has no power to award those funds to Jenkins & Clayman, or to any other

claimant.  See In re M.O.D., Inc., 170 B.R. 465 (Bankr. M.D. Ala. 1994) (bankruptcy

court had no jurisdiction over fee application filed after the case was dismissed, where the

13

dismissal order did not retain jurisdiction over any estate property); <u>Matter of Talandis</u>, 95

B.R. 108 (Bankr. S.D. Iowa 1989):

> The court is not divested of jurisdiction over a professional
> fee application in a dismissed Chapter 11 case if the Order of
> Dismissal expressly provides that the court retains limited
> jurisdiction to consider the fee application. . . .
>
> In the case at bar, Childers did not request the Court to retain
> limited jurisdiction regarding his fee application in the event
> Debtor's case was dismissed. As a result, the Order on
> Dismissal did not contain any provision providing for the
> Court's retention of limited jurisdiction to consider said fee
> application. Therefore, the Court concludes it does not have
> jurisdiction to consider Childer's fee application.

<u>Id.</u> at 109-110 (citation omitted).  <u>Compare</u> <u>In re Fox</u>, 140 B.R. 761, 762 (Bankr. D.S.D.

1992) (dismissal order provided that the court would "'retain[] limited jurisdiction, for the

sole and only purpose, of hearing a final application for compensation to be brought by

debtors' attorney pursuant to § 330(a).'") (quoting dismissal order); <u>Matter of Mandalay</u>

<u>Shores Co-op. Housing Ass'n</u>, 60 B.R. 22, 23 (Bankr. M.D. Fla. 1986) (same).


III.


When these two cases were dismissed on February 7, 2006, there were no

pending matters over which this court could conceivably retain subject matter

jurisdiction; nor did any party seek to demonstrate cause to preclude all property held by

the trustee from revesting upon dismissal.  <u>Compare</u> <u>In re DeLuca</u>, 142 B.R. 687 (Bankr.

D.N.J. 1992) (Jenkins & Clayman expressly requested that the bankruptcy court retain

jurisdiction after dismissal to adjudicate its fee request).  Nevertheless, Jenkins &

Clayman maintains that a bankruptcy court always has subject matter jurisdiction to grant

14

compensation to debtor's chapter 13 counsel, even if the demand for compensation is made after dismissal of a case and the court has not retained jurisdiction over estate property. I am aware that some courts have viewed post-dismissal fee determinations as an "ancillary" issue for which federal court jurisdiction exists. See, e.g., In re Dahlquist, 751 F.2d 295, 298 (8th Cir. 1985). Other courts have stated (although sometimes in dicta) that a bankruptcy court has the power to decide a request for attorney's fees even if it is first raised after the case has been dismissed, and even when the dismissal order does not retain jurisdiction. See In re Fox, 140 B.R. at 762; see also In re Brickell Investment Corp., 171 B.R. 149, 156 (S.D. Fla. 1994) ("Fees are such an essential item to the bankruptcy court's core of jurisdiction that the court can, and must, consider same, even after dismissal of the case."); In re Fricker, 131 B.R. 932, 937-38 (Bankr. E.D. Pa. 1991).

One court has broadly stated:

> Under the law of this circuit, the bankruptcy court retains subject matter jurisdiction to interpret orders entered prior to dismissal of the underlying bankruptcy case . . . and to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying action. . . . The bankruptcy court does not have jurisdiction, however, to grant new relief independent of its prior rulings once the underlying action has been dismissed

In re Taylor, 884 F.2d 478, 481 (9th Cir. 1989)

Upon review of those decisions, I agree that, in certain instances, a bankruptcy court could retain ancillary jurisdiction over a fee request after dismissal. However, I disagree that it always retains such jurisdiction in every instance, as a matter of course.

The Supreme Court has explained that ancillary jurisdiction can arise only in two circumstances:

15

> Generally speaking, we have asserted ancillary jurisdiction (in
> the very broad sense in which that term is sometimes used) for
> two separate, though sometimes related, purposes: (1) to
> permit disposition by a single court of claims that are, in
> varying respects and degrees, factually interdependent . . .;
> and (2) to enable a court to function successfully, that is, to
> manage its proceedings, vindicate its authority, and effectuate
> its decrees. . . .

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 379-80 (1994) (citations

omitted).

It is only the second circumstance that would be relevant to a post-dismissal

fee request.[10]  For example, where a bankruptcy court has issued a disgorgement order

under section 329, prior to dismissal of the case, the court could retain ancillary

jurisdiction to enforce that order after dismissal.  See Post v. Ewing, 119 B.R. 566 (S.D.

Ohio 1989).  Or, where a court had issued a fee allowance order prior to dismissal, it may

retain ancillary jurisdiction to revisit that order in appropriate circumstances.

In these two bankruptcy cases, however, where no fee disgorgement is

sought, where no fee application was ever filed nor approved prior to dismissal, and

where the dismissal order did not retain jurisdiction over any estate property nor over any

pending dispute, the exercise of ancillary jurisdiction is inappropriate if not precluded.

---

[10]I do not find analogous non-bankruptcy decisions in fee shifting cases,
discussing the power of a court to issue a fee award to the prevailing party after an appeal is
taken.  Section 330 of the Code, which authorizes the award of counsel fees to certain attorneys,
is not a fee-shifting statute.  See generally In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833,
846 n.16 (3d Cir. 1994).  And a debtor whose bankruptcy case has been dismissed is not a
prevailing party.

IV.

In addition to ancillary jurisdiction, federal courts have the power to revisit prior orders, including orders of dismissal, by way of reconsideration.  See Cavalliotis v. Salomon, 357 F.2d 157 (2d Cir. 1966).  A motion seeking reconsideration of the dismissal order pursuant to Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60), see generally Matter of Garcia, 115 B.R. at 170 (dismissal order may be reconsidered pursuant to Fed. R. Bankr. P. 9024), may, if granted, provide bankruptcy subject matter jurisdiction over a dispute initiated after dismissal.  See In re King, 214 B.R. at 337.  Thus, in appropriate circumstances, a bankruptcy court could theoretically vacate a dismissal order and thereby possibly obtain the power to adjudicate a fee application involving property held by the trustee.  See In re Hansler, 203 F.3d 828 (5th Cir. 1999).[11]

Here, Jenkins & Clayman has not expressly sought to vacate the dismissal order of either case.  Nor does the law firm suggest that dismissal of those cases was unjustified.  I am aware, though, that courts have occasionally treated certain motions as implicitly seeking reconsideration of a dismissal order under Rule 9024.  See In re Flores, 2001 WL 543677, at *3 ("Debtor's motion to reopen [a dismissed case] could be construed as one . . . under Rule 9024 and Rule 60(b)"); In re Critical Care, 236 B.R. at 140 ("[T]he Bankruptcy Court correctly held that, inasmuch as [the] motion to 'reopen'

---

[11]This assumes that vacating a dismissal order also vacates the revesting of estate property.  Where property of the estate has been abandoned by a trustee under section 554, some courts have held that such abandonment is "irrevocable."  See, e.g., In re Kloian, 115 Fed. Appx. 768, 769 (6th Cir. 2004); In re McGowan, 95 B.R. 104 (Bankr. N.D. Iowa 1988) (abandonment of property is irrevocable, even if there is a discovery that the property has greater value than previously believed).  I do not now decide whether a court may "unvest" property of the estate that already revested.

17

was in reality a motion to set aside the Bankruptcy Court's . . . Order, the motion was properly analyzed under Bankruptcy Rule 9024, which makes Rule 60(b) applicable to bankruptcy cases"); In re Lewis & Coulter, Inc., 159 B.R. at 191 (former debtor's motion to "reinstate and refile the within case" is treated as a motion for reconsideration of the dismissal order).

      As with the exercise of ancillary jurisdiction, trial courts have discretion under Rule 60(b), and their decisions are reviewed for abuse of discretion. See, e.g., Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984); In re Flores, 2001 WL 543677, at *4; Hartford Accident & Indemnity Co. v. Smeck, 78 F.R.D. 537, 540 (E.D. Pa. 1978). If Jenkins & Clayman could only seek payment for their services as debtors' bankruptcy counsel in this court, I would consider that limitation in determining whether to vacate dismissal. Cf. Matter of Statistical Tabulating Corp., Inc., 60 F.3d 1286 (7th Cir. 1995) (Garza, C.J., concurring) (fairness to the parties, among other factors, should be considered in deciding whether to retain jurisdiction of a turnover matter after dismissal of a bankruptcy case).

      However, it is clear that this law firm could proceed in state court against its former clients to seek recovery of its fees for bankruptcy services rendered in this forum. See In re Elias, 188 F.3d 1160, 1162 (9th Cir. 1999):

> We also affirm the bankruptcy court's refusal to consider the fees. A post-dismissal motion to enforce a fee agreement between a debtor and her attorney is ancillary to the bankruptcy court's core function of adjudicating the estate. . . . The bankruptcy court has discretion to refuse to hear ancillary matters. . . . Because we agree with the bankruptcy court that the state court is fully capable of resolving the fee dispute in this case, we hold that the bankruptcy court did not abuse its discretion in declining to decide the fee issue.

(citations omitted).  Thus, in In re Kent Funding Corp., 290 B.R. 471 (Bankr. E.D.N.Y.

2003), a bankruptcy court declined to vacate a dismissal order to determine a post-

dismissal fee application because the issue could be adjudicated in state court.  Id. at 477-

78.

      Furthermore, Jenkins & Clayman received notice of the trustee's motion to

dismiss months prior to dismissal.  Nonetheless it took no action while those cases were

pending.  In addition, the application of section 1326(a)(2) in these instances, upon which

the law firm relies, is complicated by the language of section 349(b)(3).  Accordingly,

counsel's right to payment from funds held by the trustee neither not simple nor

automatic.

      Indeed, the statutory provision found in section 349(b)(3)—requiring a

party to demonstrate "cause" to prevent revesting of estate property—suggests that

Congress intended revesting as presumptively appropriate.  Jenkins & Clayman's position

appears to proffer a contrary presumption: that, as a matter of course, a chapter 13 trustee

should always pay funds received from debtors prior to confirmation to debtors' counsel

upon dismissal, rather than to the debtors.[12]

---

[12]The law firm clearly believes that debtor's counsel should not be at risk for non-
payment if a chapter 13 case is dismissed prior to confirmation.  Indeed, Jenkins & Clayman
included a provision in Mr. Ragland's proposed plan that "[i]f Chapter 13 case is dismissed prior
to confirmation, the trustee SHALL disburse to satisfy the Jenkins & Clayman priority claim
prior to refunding money to the debtor(s)."  Ragland Amended Chapter 13 Plan, at 2 (emphasis
in original).  Of course, since the issue only arises when dismissal occurs prior to confirmation,
such a plan provision can never be effective.  But it does reflect the firm's sense of entitlement,
even when (as in the Ragland case) there are likely to be other administrative and priority
creditors.  The questions raised by these motions, unanswered due to my lack of jurisdiction, is
whether Congress agrees with Jenkins & Clayman's interpretation of section 1326(a)(2), and
with the firm's implicit contention that the chapter 13 trustee holds funds for the benefit of
debtor's counsel prior to confirmation.

Finally it is likely that other parties—who will have had no advance notice of the dismissal[13]—may hold administrative claims and so should receive notice that they too could seek payment from funds held by the trustee. To reconsider dismissal may require the trustee to expend time: possibly in sending notice; possibly in reviewing various claims to the funds he holds; and possibly in participating at hearings held on the validity of those claims. As mentioned earlier, courts have held that the trustee can not be compensated for such activities.[14]

In light of these factors, I conclude that, if Jenkins & Clayman were implicitly seeking reconsideration of the two dismissal orders, the better exercise of discretion is to deny that request, thereby permitting the trustee to comply with section 349(b)(3) and return former estate property to the entities who were vested in property

---

[13]As noted earlier, Fed. R. Bankr. P. 2002(a)(4) does not require notice of dismissal hearings to creditors in chapter 13 cases, although they are entitled to notice of the dismissal order under Rule 2002(f)(2).

[14]Ironically, in In re Miranda, 285 B.R. 344 (Table), 2001 WL 1538003 (B.A.P. 10th Cir. 2001), a chapter 13 trustee sought payment of his statutory commission found in 28 U.S.C. § 586(e) from funds paid by debtors in all cases dismissed or converted prior to confirmation. Various chapter 13 debtors (through their attorneys presumably) opposed such payments, contending that the Bankruptcy Code only permitted payment of commissions upon confirmation and distribution to creditors. The trustee made policy arguments in support of his position, probably in light of adverse language in the relevant statutory provisions. The court strictly construed the relevant statutes and the trustee did not prevail. Accordingly, the funds held by the trustee were repaid to the debtors. See also In re Ward, 132 B.R. 417 (Bankr. D. Neb. 1991).

Here, Jenkins & Clayman proposes an interpretation of section 1326(a)(2) by which debtor's chapter 13 counsel will always be paid from funds received by a chapter 13 trustee upon dismissal of the case. Perhaps recognizing that the literal language of the statute may not support its position, Jenkins & Clayman buttresses its contention by making policy arguments. The trustee's counter-position on the merits—that only the debtors are entitled to the funds—is one of strict statutory construction of sections 349(b)(3) and 1326(a)(2).

prepetition.  I anticipate that Jenkins & Clayman will seek relief, if justified, from its

former clients in state court.

An appropriate order shall be entered denying these motions for lack of

subject jurisdiction.

UNITED STATES BANKRUPTCY  COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| TYREE J. RAGLAND | : | |
| Debtor | : | Bankruptcy No. 05-18142 |

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| SHAUN E. NEIL and MARLO T. NEIL | : | |
| Debtors | : | Bankruptcy No. 05-31361 |

...................................................

ORDER

...................................................

AND NOW, this 25th day of May 2006, for the reasons stated in the accompanying memorandum, it is hereby ordered that the motions of Jenkins & Clayman "to approve distribution of pre-confirmation payments held by the chapter 13 trustee to debtor's counsel for outstanding legal fees" are dismissed for lack of subject matter jurisdiction.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

William C. Miller, Esquire
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106

Diannajean Giganti, Esquire
Jenkins & Clayman
412 White Horse Pike
Audubon, N.J. 08106